IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF MIDDLE DISTRICT OF TENNESSEE AT
NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF TENNESSEE *ex rel.* RACHEL THOMAS, M.D. | ) ) ) ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) ) ) |
| MEHARRY MEDICAL COLLEGE, HOSPITAL AUTHORITY OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY D/B/A NASHVILLE GENERAL HOSPITAL AT MEHARRY, HOSPITAL MEDICINE SERVICES OF TENNESSEE, P.C. D/B/A TEAMHEALTH, MONIQUE BENNERMAN, M.D. CALVIN SMITH, M.D. AYODEJI OSO, M.D. RICHMOND AKATUAE, M.D. JAYASHREE NATHAN, M.D. LLOYDA WILLIAMSON, M.D. ACCHAL EL KADMIRI, M.D. and OLUMUYIMA ESURUOSO, M.D. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. _____

**03 - 20  0658**

RELATOR'S **SEALED** COMPLAINT
PURSUANT TO THE FALSE CLAIMS
ACT, 31 U.S.C. § 3729,

*FILED IN CAMERA AND UNDER SEAL*

*DO NOT PLACE ON PACER*

*JURY TRIAL DEMANDED*

## COMPLAINT

*Qui Tam* Relator Rachel Thomas, M.D., brings this action on behalf of herself and in the names of the United States of America and the State of Tennessee, by and through her undersigned attorneys, and alleges as follows:

1

1. This is a civil action brought by the United States for treble damages, civil penalties, and costs under the False Claims Act, as amended, 31 U.S.C. §§ 3729 *et seq.*

2. The Relator, on behalf of herself and the State of Tennessee, also brings this action to recover treble damages, civil penalties, and costs under the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-181 *et seq.*

3. This action arises from Defendants' fraud and conspiracy to defraud TennCare/Medicaid and Medicare. This action encompasses the false claims, materially false statements, and fraudulent documents that the Defendant knowingly presented, or caused to be presented to, the United States, in violation of the False Claims Act ("FCA"), and the State of Tennessee, in violation of the Tennessee Medicaid False Claims Act ("TMFCA").

**PARTIES**

4. Dr. Rachel Thomas, M.D., Relator and *qui tam* Plaintiff, is a citizen of the United States and a resident of Davidson County, Tennessee. She is a hospitalist and practices internal medicine. She is employee of the Defendant TeamHealth. Relator has been a licensed physician since 2001.

5. Defendant Hospital Medical Services of Tennessee, P.C. d/b/a TeamHealth (hereafter "TeamHealth") is a professional corporation formed under the laws of Tennessee with its Principal Office located at 265 Brookview Center, Suite 400, Knoxville, TN 37919. TeamHealth staffs hospital emergency rooms and hospital groups throughout the United States, including staffing for residents and physicians. In 2010, TeamHealth entered into a contract to staff the emergency room at Defendant Nashville General Hospital at Meharry.

2

6. Defendant Meharry Medical College, is a non-profit corporation formed under the laws of Tennessee with its Principal Office located at 1005 Dr. DB Todd Junior Blvd, Nashville, Davidson County, TN 37208. The registered agent for service of process is Ivanetta Davis Samuels, located at the address above.

7. Defendant Hospital Authority of The Metropolitan Government of Nashville and Davidson County d/b/a Nashville General Hospital at Meharry was created by the Metropolitan Government of Nashville and Davidson County, a municipal corporation, pursuant to The Metropolitan Hospital Authority Act, T.C.A. § 7-57-101 *et seq.* The Hospital Authority is governed by a Board of Trustees, which exercise all administrative functions pertaining to the operation of Nashville General Hospital at Meharry (hereafter "Nashville General"), and its related facilities. Nashville General is owned and operated by the Metropolitan Hospital Authority.

8. Defendant Monique Bennerman, M.D., is an internal medicine physician employed by Meharry Medical college in Nashville, Tennessee.

9. Defendant Calvin Smith, M.D., is an internal medicine physician employed by Meharry Medical College in Nashville, Tennessee.

10. Defendant Ayodeji Oso, M.D., is an internal medicine physician employed by Meharry Medical College in Nashville, Tennessee.

11. Defendant Richmond Akatuae, M.D., is the program director for Meharry Medical College's internal medicine program in Nashville, Tennessee.

12. Defendant Jayashree Nathan, M.D., is a family practitioner and she works for Meharry in Nashville, Tennessee.

3

13. Defendant Lloyda Williamson, M.D., is a psychiatrist who works for Meharry Medical College in Nashville, Tennessee.

14. Defendant Acchal El Kadmiri, M.D., is an oncologist who is employed by Meharry Medical College in Nashville, Tennessee.

15. Defendant Olumuyima Esuruoso, M.D., is the acting co-director of Meharry's GME program, and he also works at Tristar Centennial as a hospitalist and program director. He is also the hospitalist faculty member at Nashville General Hospital and works in Nashville, Tennessee.

16. The Defendants provide medical services and assist patients in need of, *inter alia,* emergency room care. The Defendants provide medical services to eligible Medicare and TennCare/Medicaid beneficiaries. The Defendants bill and/or seek reimbursement from Medicare and TennCare/Medicaid.

## JURISDICTION AND VENUE

17. As required under the False Claims Act, 31 U.S.C. § 3730 and the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-181 *et seq.*, the Relator has filed this action *in camera* and under seal, and has provided the United States Attorney for the Middle District of Tennessee with a statement of all material evidence available at this time, including information related to the complaint. Relator has likewise served a copy of this Complaint and the written disclosure statement upon the State of Tennessee pursuant to T.C.A. § 71-5-183(b).

18. The United States of America is named as a plaintiff pursuant to 31 U.S.C. § 3730(b)(1), and jurisdiction lies in this court pursuant to 28 U.S.C. §§ 1331, 1345, and personal

4

jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a). This Court has jurisdiction

over the Tennessee Medicaid False Claims Act claims pursuant to 31 U.S.C. § 3732(b).

19. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the Defendants

conduct business in this district and the claims set forth in this complaint arose in this

district.

20. The allegations contained herein are based on non-public information, and the Relator is

the original source of the information, having direct and independent knowledge of the

information on which these allegations are based. 31 U.S.C. § 3730(e)(4)(B).

## THE LAW

### THE MEDICARE PROGRAM.

21. Medicare is a federally funded health insurance program that serves certain disabled

people, as well as people age 65 and above. The program reimburses providers who care

for Medicare patients in two ways. First, Medicare Part A funds the hospital's institutional

health costs associated with each patient, including such costs as patient room and board,

nursing, resident salaries, and other inpatient costs. Second, Medicare Part B covers

medical services provided on a fee-for-service basis such as physician services, medical

supplies, and diagnostic/laboratory tests.

22. Medicare reimbursements for costs associated with graduate medical education ("GME")

residency programs are funded through a combination of both Part A and Part B.

23. Part A, 42 U.S.C. §§1395c-1395i-5 provides basic insurance coverage for hospitalization

and reimburses a provider for general costs associated with the residency program,

including resident salaries and fringe benefits, physician compensation costs for GME

program activities, and other GME program costs. These payments are intended in part to

5

cover the portion of the teaching physicians' salaries that is related to the time they spend teaching residents. By this mechanism, teaching physicians are paid for taking responsibility for the hospital's oversight of its doctors in training. When a resident working within the scope of his residency program performs a physical examination on a Medicare patient, the cost of this examination is treated as a general cost of the hospital's residency program. As such, it is reimbursable under Medicare Part A.

24. In contrast, Medicare Part B, 42 U.S.C. §§ 1395j-1395w-4, reimburses a provider for specific services performed by attending physicians. In certain instances, a hospital may bill Medicare Part B for attending physician services which are actually conducted by residents working within the scope of their residency programs. However, to do so, the residents must be in the physical presence of a teaching physician at the time the services are performed. "Physically Present" is defined in the Medicare Claims Processing Manual, § 100, as "The teaching physician is located in the same room (or partitioned or curtailed area, if the room is subdivided to accommodate multiple patients) as the patient and/or performs a face-to-face service." Additionally, senior residents who qualify and become licensed with the state may work outside of their residency program as attending physicians. In such instances, the hospital may bill Medicare Part B for these services.

25. Pursuant to 42 C.F.R. § 415.208(b), the services of residents to inpatient hospitals in which the residents have their approved GME program are not covered as physician services, but are reimbursable by Medicare. Residents can obtain medical licenses and become senior residents, who are then properly allowed to moonlight as attending physicians. When they act as attending physicians, their services are also reimbursed by Medicare. A senior resident cannot work as an attending physician during residency hours because they cannot

6

be two things at once, and the billing or reimbursements come from different parts of Medicare.

### *THE TENNCARE – MEDICAID PROGRAM*

26. The United States provides funds to the State of Tennessee Division of Health Care Finance & Administration (HCFA) through the Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396 et seq. TennCare is a Medicaid demonstration waiver program under 42 U.S.C. § 1315. Enrolled providers of medical services to Medicaid recipients are eligible for reimbursement for covered medical services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act (hereafter the Medicaid Act). Tennessee provides Medicaid services pursuant to waivers of federal Medicaid requirements and is subject to continuing unwaived provisions of the Medicaid Act. By becoming a participating provider in Medicaid, enrolled providers agree to abide by the rules, regulations, policies and procedures governing reimbursement, and to keep and allow access to records and information required by Medicaid. In order to receive Medicaid funds, enrolled providers, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State of Tennessee HCFA.

27. Among the rules and regulations which enrolled providers agree to follow are that they will not bill the HCFA for any services not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information to the HCFA relating to provider costs or services. Enrolled providers agree to comply with state and federal

7

statutes, policies and regulations applicable to the Medicaid program and will not engage in any illegal activities related to the furnishing of services to recipients.

28. The Defendants are a participating Medicaid provider. The Defendants had a policy and practice of submitting claims to Medicaid for services. The Medicaid program constituted a significant source of gross revenue for the Defendants.

29. Pursuant to T.C.A. § 71-5-19(a)(1), the Tennessee legislature adopted a uniform TennCare claims process and directed the Department of Commerce and Insurance to promulgate rules regulating the same. Pursuant to this directive, the Department of Commerce adopted the use of the HCFA-1500 form for TennCare claims. Tenn. Comp. R. & Regs. 0780-01-73-.04.

30. When submitting claims to TennCare, the Defendants used claim forms containing the following certification:

   **SIGNATURE OF PHYSICIAN (OR SUPPLIER):** I certify that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction.

   NOTICE: This is to certify that the foregoing information is true, accurate, and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of material fact, may be prosecuted under applicable Federal or State laws.

31. Thus, when submitting claims to Medicaid, the Defendants signed the certification above and present the claim for payment.

32. Tennessee's Medicaid False Claims Act ("TMFCA") is substantially similar to the FCA but covers claims made to TennCare. T.C.A. § 71-5-181 *et seq.*

33. A person is liable to the State of Tennessee for each instance in which the person

   (1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval under the Medicaid program; (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or

8

fraudulent claim to get a false or fraudulent claim under the Medicaid program paid for approval; [or] Conspires to commit a violation of subdivision (a)(1)(A), (a)(1)(B), or (a)(1)(D)…

T.C.A. § 71-5-182(a)(1).

34. For each violation, the TMFCA provides that the person is liable for a "civil penalty of not less than five thousand dollars ($5000) and not more than twenty-five thousand dollars ($25,000), […] plus three (3) times the amount of damages which the state sustains because of the act of that person." Id.

35. Physician claim forms, such as Form HCFA-1500, carry an express certification that, *inter alia,* the services rendered were medically necessary and that they were rendered under the certifying physicians' immediate personal supervision by his employee.

36. At all times relevant hereto, TennCare/Medicaid program constituted a substantial source of revenue for the Defendants.

***THE STARK ACT, 42 U.S.C. § 1395nn.***

37. The Stark Act, 42 U.S.C. § 1395nn, prohibits a physician or immediate family member from referring a patient to any provider that provided designated health services if the physician or immediate family member has a direct or indirect relationship with the provider. A "financial relationship" is defined as any compensation arrangement between the physician and the provider. In the event that a referral is made and a financial relationship exists, the provider cannot submit a claim to Medicare for the designated health services provided, unless the financial relationship falls under a statutory or regulatory exception.

9

## THE FRAUDULENT SCHEMES AND FALSE CLAIMS FOR PAYMENT

38. Medicare funds Meharry Medical College's (hereafter "Mehary") GME residency program, providing approximately one-hundred thousand dollars ($100,000.00) to one-hundred and twenty thousand dollars ($120,000.00) per resident.

39. Nashville General Hospital is a participant in Meharry's GME residency program, and the salaries of residents are determined pursuant to a contract between the residents and Meharry.

40. Meharry's GME program requires that residents work a minimum number of shifts per month at Nashville General Hospital, while working under the direct, physical supervision of an attending physician.

41. Meharry residents do not have billing privileges. They are not licensed to practice medicine and should not be allowed to see patients without the attending supervision from a teaching physician. Meharry residents do not have Medicare billing privileges.

42. Defendant TeamHealth uses contract physicians and residents to staff emergency rooms, and participates in Meharry's GME residency program. TeamHealth receives reimbursement for claims made under Medicare.

43. As set forth in detail, *infra,* the Defendants have willfully and intentionally engaged in a pattern and practice of submitting fraudulent bills to Medicare and TennCare/Medicaid for the purpose of seeking payment for physician services performed in TeamHealth-staffed emergency rooms when in fact the services were performed by unsupervised non-physician residents.

44. Relator Rachel Thomas is a hospitalist and medical doctor practicing internal medicine. She was hired by the Defendant TeamHealth in April of 2019 to staff its emergency room.

10

45. Shortly after her arrival, Relator noticed many complications within the facility leading to patient deaths. Relator reported the deficiencies because she knew that the Defendants' residents were not being supervised.

46. Although the Meharry residents should not be allowed to see or treat patients without supervision from a physician who is physically present, the Defendants informed relator that she was to allow residents to see and treat patients without supervision.

47. Relator discovered that unstable patients were being admitted to the floor when they were supposed to be in the intensive care unit. Chief compliance officer Julie Groves and Shelley Lee, the risk manager, were aware of the poor quality of care, that there were numerous complications from surgeries, including infections. Ms. Lee stated that the hospital did not keep a log of these deficiencies so that there "would not be a paper trail."

48. Over the last year, Relator has reported patient safety concerns to her boss, Dr. Abu Ali, as well as other leadership at Meharry, only to be informed that nothing will change because TeamHealth will lose a $3 million contract.

49. Relator also informed Dr. DeAnn Bullock, the emergency department medical director and chief medical officer for Nashville General Hospital at Meharry, who instructed Relator to keep quiet about her complaints.

50. In May of 2020, Relator witnessed three (3) patients on her floor die due to complications created by the Defendants' lack of supervision of residents. She reported the issues again. Instead of fixing the problems leading to patient deaths, the Defendants reported Relator, in retaliation for her investigation of .

51. TeamHealth has billed Medicare and TennCare/Medicaid for physician services performed by unsupervised resident doctors who were working within the scope of their residency

11

program, while at the same time these unsupervised resident doctors were obtaining residency credit and being paid by Medicare pursuant to their residency contracts. This practice results in Medicare and TennCare/Medicaid paying twice for the same physician services provided by the unsupervised resident doctors.

52. CMS gives every hospital a score and provides funding based on that score. To increase their score and funding, Nashville General stopped reporting the problems. Relator discovered that Nashville General Hospital was not reporting accurate data to CMS and TennCare. Had they done so, Nashville General would have received a LEAP FROG D grading. Because of the skewed statistics, CMS paid increased funding that it otherwise would not have done.

53. The Defendants routinely bill insurance companies for services, including Medicare and TennCare/Medicaid, without even seeing the patients.

54. In June of 2020, Relator took over a psychiatric case at Meharry. Meharry does not have a telemedicine program inside the hospital. Although Medicare and the Accreditation Council for Graduate Medical Education ("ACGME") accreditation board require psychiatric patients to have an in-person evaluation by the attending physician, the attending physicians at Meharry fail to do so. Attending physicians are solely responsible for signing the patients' charts, but they never see the psychiatric patients. Because they can sign the patient's chart electronically, they never have to go into the hospital to perform their rounds.

55. Relator discovered that the attending physicians never see the patients. Although unsupervised residents are seeing the patients, the attending physicians are billing for it, in

12

violation of the False Claims Act, the Tennessee Medicaid False Claims Act, and the Stark Act.

56. The Relator has personal knowledge of the following physicians who improperly billed and continue to bill the services of unsupervised residents as the services of a physician, since at least April of 2019:

   a)  Dr. Monique Bennerman.

   b)  Dr. Calvin Smith.

   c)  Dr. Ayodeji Oso.

   d)  Dr. Richmond Akatuae.

   e)  Dr. Jayashree Nathan.

   f)  Dr. Lloyda Williamson.

   g)  Dr. Acchal El Kadmiri.

57. Due to the widespread practice accepted by the Defendants, upon information and belief, there are numerous, additional providers whose services are improperly billed.

58. Although they are required to do so, Dr. Bannerman and Dr. Smith never see patients in house and never perform rounds on the patients. Relator met with Dr. Abu Ali and asked, "isn't that illegal?" Relator informed Dr. Ali that the practice constituted fraud, which she subsequently reported to Nesreen Kaufman at TeamHealth, and Julie Groves at Nashville General. Instead of initiating an investigation, Kaufman and Groves informed Relator not to speak up or speak out about her concerns.

59. The Defendants are billing unsupervised resident physician office visits as supervised visits on encounter forms to avoid a downward adjustment in reimbursement.

13

60. The Defendants had implemented a scheme to have unsupervised residents billed as a physician and to manipulate patient records in order to have these fraudulent claims approved, when in fact the physician had never examined the patient and the claims would have been denied by both Medicare and TennCare.

61. The Defendants have submitted, or caused to be submitted, false records to Medicare and TennCare for reimbursement of the costs of office visits, medical procedures, and other services rendered by the Defendants.

62. The Relator believes and avers that additional false claims and acts of fraud will be discovered, and reserves the right to amend this Complaint accordingly.

***Stark Act Violations***

63. Dr. Olumuyima Esuruoso is the acting co-director of Meharry's GME program, and he also works at Tristar Centennial as a hospitalist and program director. He is also the hospitalist faculty member at Nashville General Hospital. He receives remuneration from all three entities.

64. Relator notified the compliance officer, Julie Groves, that Dr. Esuruoso was moonlighting at Tristar Centennial while he was on call at Nashville General Hospital, where he was supposed to be supervising residents but was instead covering shifts at both locations at the same time. Dr. Esuruoso was also transferring patients who presented at the emergency room at Nashville General Hospital and sending them to Centennial. In addition to being paid for his work as the program director for Meharry's residency program, Dr. Esuruoso is paid by TeamHealth and Envision/Centennial Tristar at the same time.

14

65. By referring Nashville General patients to Centennial, Dr. Esoruso is paid only $360 per night to cover the emergency room at Nashville General, but is able to bill at least $120 per hour at Centennial. Thus, his self-referrals to a different provider violate the Stark Act.

66. TeamHealth was aware of Dr. Esuruoso's Stark Act violations, as were Dr. Gaskin and Meharry's case management team, but they failed and refused to report known Stark Act violations.

67. In retaliation for her reports of fraud and abuse, the Defendants have initiated bogus "peer review" meetings in order to intimidate and threaten Relator's job.

68. Because of the Relator's investigation of, and opposition to, the Defendants' unlawful conduct, the Defendants created a separate team for Relator. The Defendants have been attempting to constructively discharge the Relator by placing her on a 7-day work schedule in which she works 20 hours per day, essentially preventing the Relator from returning home.

69. Thereafter, Defendants have substantially altered Relator's work schedule, eliminated her teaching position and her faculty position, and have caused her to lose a substantial portion of her salary.

## COUNT ONE:
## VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(1)(A)
### *"Presentment False Claims"*

70. Since at least April of 2019, the Defendants knowingly presented, or caused to be filed with the United States Government and paid to themselves through the Medicare programs claims which the Defendants knew were false, or which the defendants were grossly negligent and in reckless disregard to the facts and conditions that would indicate that the claims were inaccurate or inappropriate and false, and which the entities would otherwise

15

not have paid the services of physicians who were enrolled with Medicare and which were misled by the Defendants' scheme into believing that enrolled providers had provided the services, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and which fraudulent actions caused payment for the claims to be made by the United States Government containing:

    a) False certifications, including Center for Medicaid Services ("CMS") Form 1500 ("Health Insurance Claim Form") for payment or approval of costs, falsely certifying that the services for which payment "were personally furnished by [the provider] or were furnished incident to [the provider's] professional service by [the provider's] employee under [the provider's] immediate personal supervision";

    b) False certifications indicating that a physician had performed services, when in fact an unsupervised resident had performed the services.

71. The Defendants had actual knowledge that the information contained in the claims was false. These false or fraudulent claims for payment or approval made by the Defendants were material to CMS decision to pay the Defendants.

72. By reason of the violation of 31 U.S.C. § 3729(a)(1)(A), the Defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

**COUNT TWO:**
**VIOLATION OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT**
**T.C.A. § 71-5-182(a)(1)(A)**
***"Presentment False Claims"***

73. Since at least April of 2019, the Defendants knowingly presented, or caused to be filed with the State of Tennessee for payment, claims which the defendants knew were false, or which the defendants were grossly negligent and in reckless disregard to the facts and

conditions that would indicate that the claims were inaccurate or inappropriate and false, in violation of the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-182(a)(1)(A).

74. Specifically, the Defendants' fraudulent actions caused payment to be made by the State of Tennessee for claims of services of unsupervised residents, while certifying to the United States and the State of Tennessee that such claims were those of a physician who had never performed the services for the patient and was not in the actual presence of the resident. Specifically, Defendants submitted false certifications, including but not limited to Center for Medicaid Services ("CMS") Form 1500 ("Health Insurance Claim Form") for payment or approval of costs, falsely certifying that the services for which payment was sought "were furnished incident to [the provider's] professional service by [the provider's] employee under [the provider's] immediate personal supervision";

75. These false or fraudulent claims for payment or approval made by the Defendants were material to the State's decision to pay the Defendants, and constitute a violation of the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-182(a)(1)(A).

76. By reason of the violation of T.C.A. § 71-5-182(a)(1)(A), the Defendants have knowingly and recklessly damaged the State of Tennessee in an amount to be determined at trial.

**COUNT THREE:**
**VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT**
**31 U.S.C. § 3729(a)(1)(B)**
*"Records and Statements False Claims"*

77. Since at least April of 2019, the Defendants made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, which claims and certifications were presented, or caused to be presented, to the United States Government. The Defendants did so with knowledge that the certifications and claims were false, or with gross negligence or reckless disregard to the facts and conditions that would indicate that

17

the claims were inaccurate or inappropriate and false, and which caused payments for the claims to be made by the United States Government, as alleged in the Amended Complaint as follows:

    a) Defendants submitted CMS-1500 forms falsely certifying to the United States that the visits, treatments, and/or procedures were performed by a physician or under proper physician supervision.

78. These false records submitted, and false statements made, by the Defendants, were material to the Government's decision to pay the Defendants, which was material to these claims. The Defendants are therefore liable under the False Claims Act.

79. By reason of the violation of 31 U.S.C. § 3729(a)(1)(B), the defendants have knowingly or recklessly damaged the United States Government in an amount to be determined at trial.

**COUNT FOUR:**
**VIOLATION OF TENNESSEE MEDICAID FALSE CLAIMS ACT**
**T.C.A. § 71-5-182(a)(1)(B)**
***"Records and Statements False Claims"***

80. Since at least April of 2019, the Defendants made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, which claims and certifications were presented, or caused to be presented, to the State of Tennessee, in violation of the Tennessee Medicaid False Claims Act, T.C.A. § 71-5-182(a)(1)(B). The Defendants did so with knowledge that the certifications and claims were false, or with gross negligence or reckless disregard to the facts and conditions that would indicate that the claims were inaccurate or inappropriate and false, and which caused payments for the claims to be made by the United States Government, as alleged in the Complaint as follows:

a) Defendants submitted CMS-1500 forms falsely certifying to the State of Tennessee that the visits, treatments, and/or procedures were performed by a physician or under proper physician supervision;

81. These false records submitted, and false statements made, by the Defendants, were material to the State of Tennessee's decision to pay the Defendants and any third parties, including the Defendants' patients and pharmacists who submit claims in reliance upon the false statements and records submitted by the Defendants which were material to these third party claims. These false statements and records make the Defendants liable under the Tennessee Medicaid False Claims Act.

82. By reason of the violation of T.C.A. § 71-5-182(a)(1)(B), the Defendants have knowingly or recklessly damaged the State of Tennessee in an amount to be determined at trial.

**COUNT FIVE:**
**VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT**
**31 U.S.C. § 3729(a)(1)(C)**
**"Conspiracy False Claims"**

83. Since at least April of 2019, the Defendants knew that they were submitting false records with false certifications to Medicare indicating that physicians had performed services, when in fact the services had been provided by unsupervised residents whose claims would be denied. The defendants knew that the false records would have a material effect on the Government's decision to pay the claim.

84. The Defendants engaged in a common design to defraud the United States of America by billing the services of unsupervised residents as those of treating physicians, as alleged herein.

85. The Defendants formed the intent to commit the unlawful conduct herein, which conduct constitutes an overt act in furtherance of the conspiracy

19

86. By acting in concert to engage in the unlawful acts alleged herein, specifically the "presentment false claims" and "records and statements false claims" alleged above, the Defendants conspired to defraud the United States Government in violation of 31 U.S.C. § 3729(a)(1)(C) by engaging in a scheme of signing physician's names to records and further manipulating records for the purpose of getting false or fraudulent claims to be paid, when the physicians had not actually performed the services, which actions damaged the United States Government in an amount to be determined at trial.

87. The Defendants knew that the services of unsupervised residents would not be paid or reimbursed at the rate of a physician, but knowingly did so in order to manipulate records and have false claims paid reimbursed. The Defendants knew that these false records would have a material effect on the Government's decision to pay the claims and intentionally manipulated those records to maximize their profits for claims submitted to the Government.

88. The Defendants conspired to alter records and manipulate claim submissions of physicians and knowingly submitted false claims indicating that a provider had performed services, when in fact they had not.

89. By these actions, the Defendants conspired to commit violations of the False Claims Act.

**COUNT SIX:**
**VIOLATION OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT**
**T.C.A. § 71-5-182(a)(1)(C)**
*"Conspiracy False Claims"*

90. Since at least April of 2019, the Defendants knew that they were submitting false certifications indicating that physicians had performed services, when in fact the services had been provided by unsupervised residents whose claims would be denied. The

20

defendants knew that the false records would have a material effect on the Government's decision to pay the claim.

91. The Defendants engaged in a common design to defraud the State of Tennessee by billing the services of unsupervised residents as those of treating physicians, as alleged herein.

92. The Defendants formed the intent to commit the unlawful conduct herein, which conduct constitutes an overt act in furtherance of the conspiracy

93. By acting in concert to engage in the unlawful acts alleged herein, specifically the "presentment false claims" and "records and statements false claims" alleged above, the Defendants conspired to defraud the State of Tennessee in violation of T.C.A. § 71-5-182(a)(1)(C) by getting false or fraudulent claims to be paid, which damaged the State of Tennessee in an amount to be determined at trial.

94. By these actions, the Defendants also falsely certified on Form CMS-1500 that they were in compliance with the above-referenced statutes when they knew that they were not, and they therefore conspired to commit violations of both T.C.A. §§ 71-5-182(a)(1)(A and (a)(1)(B), all in violation of T.C.A. § 71-5-182(a)(1)(C), making the Defendants liable under the Tennessee Medicaid False Claims Act.

## COUNT SEVEN:
## FALSE COST REPORTING
## MEDICARE PART A

95. Hospitals receive interim Medicare payments throughout the fiscal year based on their expected entitlement to Medicare reimbursement. 42 C.F.R. § 413.60. At the end of the fiscal year, they must submit an a cost report and audited financial statements to their fiscal intermediary. 42 U.S.C. § 1395g; 42 C.F.R. §§ 413.20, 413.24.

21

96. Based on the cost report, Medicare determines whether a hospital is entitled to additional reimbursement or whether the hospital was overpaid and must reimburse Medicare. 42 C.F.R. §§ 413.60, 413.64(f)(1).

97. As Medicare Part A providers, the Defendants must submit cost reports submitted by providers to Medicare in accordance with 42 C.F.R. § 413.24 *et seq*. HCFA Form 2552-10 requires the providers to certify that the medical provider is in compliance with federal laws that are required for reimbursement.

98. Because the Defendants are not in compliance with the laws required for reimbursement, they are liable for submitting legally and factually-false cost reports.

99. In addition, 42 C.F.R. § 413.24(a) requires the cost report to be based on financial and statistical records, the Defendants' manipulation of statistical data has also rendered their cost reports false.

**COUNT EIGHT:**
**VIOLATION OF STARK AMENDMENT TO MEDICARE ACT**
**42 U.S.C. § 1395nn**

100. Federal law prohibits payment by Medicare or Medicaid for all claims that result from illegal medical referrals, including what is known as the Stark Law. 42 U.S.C. § 1395nn.

101. Where a physician has a financial relationship with a particular entity, the physician may not refer a patient to that entity for certain medical services and may not cause a claim to be presented for payment for those services. 42 U.S.C. § 1395nn(a). "Financial relationship" includes an ownership or investment interest in the entity, or a compensation arrangement between the physician, or his immediate family member, and the entity. 42 U.S.C. § 1395nn(a)(2).

22

102.     Dr. Esuruoso has a financial relationship with Nashville General Hospital, Centennial hospital, and Meharry Medical College.

103.     While he is on call at Nashville General Hospital and supposed to be supervising residents, he has instead referred Nashville General Hospital patients to Centennial and has obtained greater and additional payments for these services in violation of the Stark Law.

104.     The Defendants are therefore liable for civil monetary penalties of $15,000 for each claim or bill presented or caused to be presented for a service that such person knows or should know is a service for which payment should not be made.

105.     The Defendants are aware of Dr. Esuruoso's improper actions and have failed to report them in violation of $2 U.S.C. § 1395nn(g)(5).  As such, they are subject to a civil monetary penalty of $10,000 per day for each day in which reporting is required to have been made.

### COUNT NINE:
### FALSE BILLINGS INCIDENT TO STARK ACT VIOLATIONS

106. Since at least April of 2019, the Defendants have violated the Self-Referral Laws, 42 U.S.C. §§ 1395nn *et seq.* by referring patients from Nashville General Hospital to Centennial.

107. The Defendants violations of these laws rendered them statutorily ineligible to receive payment for services rendered to patients referred pursuant to the prohibited relationship of Dr. Esuruoso, of which they were fully aware, under the express terms of 42 U.S.C. § 1395nn and by operation of the Medicaid/Medicare laws and regulations, including 42 C.F.R. § 424.5(a).

108. The United States conditions payment on the Defendants' compliance with the Self-Referral Laws, 42 U.S.C. § 1395nn *et seq.*

23

109. The Defendants submitted and continue to submit claims for payment rendered to Medicare and Medicaid patients while knowingly violating the Self-Referral laws, and is thereby statutorily ineligible to receive payment in violation of the False Claims Act, 31 U.S.C. § 3729.

110. Defendants' actions also caused the submission of claims for payment for services rendered for Medicare patients while Defendants were knowingly violating the Self-Referral laws and are statutorily ineligible to receive payment, in violation of the False Claims Act 31 U.S.C. § 3729.

111. Accordingly, the Defendants have presented or caused to be presented false or fraudulent claims for payment or approval and knowingly caused false records or statements material to an obligation to pay or transmit money or property to the Government.

112. The United States has been damaged as a result. The Defendants are therefore liable for a fine of $5,500 to $11,000 for each violation, and the United States is entitled to three times the total damages sustained as a result of the Defendants' violations of 31 U.S.C. § 3729.

## COUNT TEN:
## COMMON LAW CLAIM FOR PAYMENT BY MISTAKE

113. As alleged herein, the United States of America and the State of Tennessee paid monies to the Defendants mistakenly, erroneously, or illegal, and the Defendants received the funds without right to the payment.

114. The Defendants, having received monies from the Government under mistake of fact or law, are therefore liable to refund them in full.

115. As a result, the Defendants are liable to the Plaintiffs under a theory of payment by mistake.

24

## COUNT ELEVEN:
## COMMON LAW CLAIM FOR UNJUST ENRICHMENT

116. As alleged herein, by paying the Defendants monies to which they were not otherwise
entitled, the United States of America and the State of Tennessee conferred a benefit upon
the Defendants.

117. The Defendants accepted and appreciated the benefits of these payments.

118. The Defendant's acceptance of these benefits occurred under such circumstances that it
would be inequitable for the Defendants to retain them.

119. As a result, the Defendants are liable to the Plaintiffs under a theory of unjust enrichment.

## COUNT TWELVE:
## VIOLATION OF THE WHISTLEBLOWER PROTECTION PROVISIONS
## OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3730(h).

120.     As alleged herein, Relator attempted to stop the Defendants from submitting false
claims and violating federal law. Thereafter, the Defendants began retaliating against her,
including threatening her, harassing her, and subjecting her to unwarranted peer reviews.
Relator's schedule has been manipulated and her teaching privileges removed, the loss of
her faculty position, which has already resulted in a substantial loss of pay.

121.     Defendants have therefore been discriminated against in the terms and conditions
of her employment because of her lawful acts performed in furtherance of this action and
her efforts to stop one or more violations of the False Claims Act.

122.     The Defendants are therefore liable to the Relator for twice the amount of back pay,
interest on backpay, and compensation for special damages sustained as a result of the
discrimination, including litigation costs and reasonable attorney's fees pursuant to 31
U.S.C. § 3730(h)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs United States of America and The State of Tennessee *ex rel.* Rachel Thomas pray that judgment be entered against the Defendants, each of them jointly and severally:

1. For damages for violations of 31 U.S.C. §§ 3729(a)(1)(A) to (C) and T.C.A. §§ 71-5-182(a)(1)(a) to (C);

2. That damages be trebled pursuant to 31 U.S.C. § 3729(a) and T.C.A. § 71-5-182(a);

3. For reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d) and T.C.A. § 71-5-183(d)(1)(C);

4. That Relator receive a percentage of the total recovery in accordance with 31 U.S.C. § 3730, and T.C.A.§ 71-5-183(d);

5. For an award of backpay, front pay, and compensatory damages for the Defendants' retaliation against the Relator in violation of 31 U.S.C. § 3730(h), including an additional award under § 3730(h)(2);

6. In addition, the Relator prays for such further and additional relief at law or in equity that this Court may deem appropriate or proper, including any penalties or liquidated damages that may be available.

Plaintiff demands a trial by jury for all issues so triable.

26

Respectfully submitted,

The Blackburn Firm, PLLC


 _/s/ Bryant Kroll_____
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com

*Attorneys for Relator Rachel Thomas*